BARBARA MILANO KEENAN, Circuit Judge: The Equal Employment Opportunity Commission (the EEOC) brought this action on behalf of three female employees against their employer alleging salary discrimination under the Equal Pay Act (the EPA), 29 U.S.C. § 206(d). The district court granted summary judgment in favor of the employer, the Maryland Insurance Administration (MIA), and the EEOC appealed. Upon our review, we conclude that the EEOC established a prima facie violation of the EPA, and that genuine issues of material fact exist regarding whether the pay disparity was due to factors other than gender. We therefore vacate the district court’s grant of summary judgment in favor of MIA and remand for further proceedings consistent with this opinion. I. A. MIA is an independent state agency that performs various functions related to the regulation of Maryland’s insurance industry and the enforcement of Maryland’s insurance laws. Md. Code, Ins. §§ 2-101, 2-102. MIA is subject to the State Personnel Management System, a merit-based system, which establishes job categories based on the general nature of required duties and sets corresponding levels of compensation. Md. Code, State Pers. & Pens. §§ 6-102(1)(i), (2), (3). Although MIA, as an independent state agency, is given discretion to set its employees’ salaries, MIA follows the hiring and salary practices of Maryland’s Department of Budget and Management, which promulgates a Standard Pay Plan Salary Schedule (the Standard Salary Schedule). Md. Code, Ins. § 2-105. In accordance with the Standard Salary Schedule, when a new employee is hired, MIA assigns that employee to a grade level matching the position being filled. Each grade level carries an assigned base salary and a specific salary range consisting of 20 separate steps. After designating a new employee’s particular grade level, MIA assigns the new hire to an initial step placement based on prior work experience, relevant professional designations, and licenses or certifications. In selecting a particular step level, MIA also considers the difficulty of recruiting for the position, and, under Maryland law, also awards a new employee credit for any prior years of service in state employment for the purposes of determining that employee’s step in the applicable pay grade. Md. Code, State Pers. & Pens. § 2-601. Additionally, a Maryland government employee who transfers to a “lateral” position takes her assigned grade and step with her to the new position. MIA employees work within one of six units, each comprising a different area of insurance regulation. Md. Code, Ins. § 2-102. At issue in this case is the Fraud Investigation Division. Employees working in the Fraud Investigation Division, or Fraud Investigators, are charged with investigating allegations of criminal insurance fraud perpetrated by individuajs. Until July 2013, the Fraud Investigator position was classified at a grade 15 on the Standard Salary Schedule. At that time, based on an internal job study conducted by MIA, the position was reclassified at grade 16. Under the Standard Salary Plan, individuals hired as Fraud Investigators now are assigned to a step within the grade 16 classification according to their qualifications and work experience. MIA advertises minimum and preferred qualifications for the position of Fraud Investigator. To be minimally qualified for hire as a Fraud Investigator, an applicant must have five years of fraud investigatory experience in such areas as white collar crime, financial fraud, insurance fraud, and investigations conducted under the supervision of prosecutors or other attorneys. Preferred or desired qualifications for the position include designation as a Certified Fraud Examiner, as well as experience working with attorneys and participation in court or administrative hearings. B. The EEOC brought the present action on behalf of three former MIA employees: Alexandra Cordaro, Marlene Green, and Mary Jo Rogers (collectively, the claimants). MIA hired Cordaro as a Fraud Investigator in December 2009. Cordaro had worked as a fraud investigator for a federal credit union for over two years, and as a criminal investigation and litigation paralegal for 12 years in the Baltimore County State’s Attorney’s Office. MIA assigned Cordaro to grade level 15, step four, with a starting salary of $43,495. By the time she resigned from her position at MIA about five years later, Cordaro was earning $49,916. Marlene Green was hired as a Fraud Investigator in November 2010. Green held a bachelor’s degree from Johns Hopkins University, and had more than 20 years of experience working for the Baltimore City Police Department. During the course of that employment, Green worked for approximately 13 years in an investigative capacity. In the year immediately pri- or to joining MIA, Green worked as an investigator for the United States Office- of Personnel Management and the Office of the State’s Attorney for Baltimore County. MIA assigned Green to grade level 15, step four, with a starting salary of $43,759. By February 2013, when Green resigned from MIA, her salary was $45,503. Mary Jo Rogers transferred to the Fraud Investigation Division from another position within MIA in July 2011. Rogers earlier had worked for eight years as a police officer and a detective with the Baltimore County Police Department. Immediately before being hired at MIA, Rogers worked for an insurance company as. a special investigator and an adjuster. MIA assigned Rogers to grade level 15, step five, with a starting salary of $46,268. By November 2013, Rogers’ salary was $50,800. During their tenure at MIA, Cordaro, Rogers, and Green learned that their salaries were lower than the salaries of certain male Fraud Investigators. In early 2014, after unsuccessfully seeking to correct these disparities, Cordaro and Rogers filed complaints against MIA with the EEOC. It is unclear from the present record what transpired during the EEOC process. The EEOC later filed the present lawsuit against MIA on behalf of the three claimants, alleging gender-based salary discrimination in violation of the EPA. During the ■ proceedings in the district court, the EEOC identified as comparators four male Fraud Investigators: Bruno Conticello, James Hurley, Donald Jacobs, and Homer Pennington.[1] MIA hired Conticello as a Fraud Investigator in November 2010. Conticello held both a bachelor’s and a master’s degree-in criminal justice, and had nearly 20 years of investigative experience working for various insurance companies and Maryland’s Office of the Inspector General. He also had obtained a Certified Fraud Examiner designation.[2] MIA assigned Conticello to grade level 15, step • 10, with a starting salary of $49,842. By late 2012, his salary was $51,561. James Hurley was hired as a Fraud Investigator in November 2006. Hurley most recently had worked as an investigator with an underwriting insurance organization. He also had worked previously with MIA for a total of three years as a Fraud Investigator and as an investigator in MIA’s property and casualty department. Altogether, Hurley had about 10 years of insurance-related investigative experience when he was re-hired at MIA in 2006. Hurley also had worked previously as a claim adjuster for several insurance companies, and had earned the designation of Certified Fraud Examiner. At the time of his most recent hiring at.MIA, Hurley was assigned to grade 15, step six, with a starting salary of $45,298. By the time he left MIA in October 2012, Hurley’s salary was $49,678. MIA hired Donald Jacobs as a Fraud Investigator in May 2007. Jacobs had 11 years of experience as a Natural Resources Officer with the state of Maryland, primarily engaged in conducting marine patrols, and had worked for three years as an investigator in the Office of the Public Defender in Baltimore. This investigatory experience did not relate to fraud or white collar crime. Jacobs’ starting salary at MIA was $45,298, based on his assignment to grade level 15, step six. When Jacobs left MIA - in June 2010, his salary was $47,705. Homer Pennington was hired as a Fraud Investigator in August 2007. Pennington had worked in the criminal investigation unit of the Baltimore Police Department for approximately 22 years before joining MIA. He earned the designation of Certified Arson Investigator, but neither his resume nor the record specify the requirements for acquiring this certification. Pennington was hired at grade level 15, step five, with a starting salary of $45,360. By May 2013, when Pennington left MIA, 'his salary was $47,194. The parties filed cross-motions for summary judgment in the district court. The court denied the EEOC’s motion and granted MIA’s motion. In dismissing the EEOC’s claim under the EPA, the district court effectively held that the claimants had failed to meet their prima facie eviden-tiary burden. The court concluded that the male Fraud Investigators identified by the EEOC were not valid comparators because they were hired at higher steps than were the claimants. Alternatively, the court held that MIA had shown that the disparity in pay between the claimants and the male comparators was attributable to their relative experience and qualifications. The EEOC appeals the district court’s grant of summary judgment to MIA.[3] II. On appeal, the EEOC asserts that the district court erred in awarding summary judgment in favor of MIA. The EEOC argues that it made a prima facie showing of an EPA violation by identifying four male Fraud Investigators who earned higher starting salaries than the three claimants, who were assigned lower salaries than the male comparators despite performing identical work. In addition, the EEOC contends that MIA did not establish as a matter of law that the disparity in pay between the claimants and the male comparators was due to the comparators’ credentials and prior work experience. In response, MIA argues that the EEOC failed to identify valid comparators and, thus, did not make a prima facie showing of an EPA violation.[4] According to MIA, the identified males were not valid comparators,, because MIA hired them at higher steps on its pay scale than the steps to which the claimants were assigned. Alternatively, MIA argues that even if" the EEOC made a prima facie showing of an EPA violation, MIA established as a matter of law that any pay disparity between the claimants and the comparators was based on gender-neutral reasons involving the comparators’ prior experience and credentials that each claimant lacked. We disagree with MIA’s arguments. A. We review the district court’s award of summary judgment de novo. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Carnell Constr. Corp. v. Danville Redevelopment & Hous. Auth., 745 F.3d 703, 716 (4th Cir. 2014). We consider the evidence and all inferences fairly drawn from the evidence in the light most favorable to the EEOC. Carnell, 745 F.3d at 716. The EPA prohibits gender-based discrimination by employers resulting in unequal pay for equal work.[5] 29 U.S.C. § 206(d)(1); Corning Glass Works v. Brennan, 417 U.S. 188, 195, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974). The plaintiff creates a presumption of discrimination under the EPA when she establishes a prima facie case. Brinkley-Obu v. Hughes Training, Inc., 36 F.3d 336, 344 (4th Cir. 1994). We review the issue whether a plaintiff has made the required prima facie showing using a burden-shifting framework.[6] Id.; see also Corning Glass, 417 U.S. at 196, 94 S.Ct. 2223. A plaintiff establishes a prima facie case of discrimination under the EPA by demonstrating that (1) the defendant-employer paid different wages to an employee of the opposite sex (2) for equal work on jobs requiring equal skill, effort, and responsibility, which jobs (3) all are performed under similar working conditions. Corning Glass, 417 U.S. at 195, 94 S.Ct. 2223. An EPA plaintiff need not prove that the employer acted with discriminatory intent to obtain a remedy under the statute. Ryduchowski v. Port Auth. of N.Y. & N.J., 203 F.3d 135, 142 (2d Cir. 2000); Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1533 (11th Cir. 1992) (stating that the EPA “prescribes a form of strict liability”); Sinclair v. Auto. Club of Okla., Inc., 733 F.2d 726, 729 (10th Cir. 1984). Once a plaintiff has made the required prima facie showing, under the EPA, the burdens of production and persuasion shift to the defendant-employer to show that the wage differential was justified by one of four affirmative defenses listed in the statute. Brinkley-Obu, 36 F.3d at 344. These affirmative defenses are: (1) a seniority system; (2) a merit system; (3) a pay system based on quantity or quality of output; or (4) a disparity based on any factor other than gender. 29 U.S.C. § 206(d)(1); Corning Glass, 417 U.S. at 195, 94 S.Ct. 2223. To avoid liability, the defendant must prove one of these four affirmative defenses. 29 U.S.C. § 206(d)(1); Brinkley-Obu, 36 F.3d at 344. Accordingly, if the employer fails to establish as a matter of law, for purposes of summary judgment, or to persuade a fact finder, that one or more affirmative defenses are applicable in a particular case, the plaintiff will prevail. See Brinkley-Obu, 36 F.3d at 344. While an employer may be entitled to summary judgment on an EPA claim if the employer establishes an affirmative defense as a matter of law, the burden on the employer necessarily is a heavy one.[7] See Mickelson v. N.Y. Life Ins. Co., 460 F.3d 1304, 1312 (10th Cir. 2006); Stanziale v. Jargowsky, 200 F.3d 101, 107-08 (3d Cir. 2000). The EPA prohibits disparities in pay between raen and women “except where such payment is made pursuant to” one of the four statutory affirmative defenses. 29 U.S.C. § 206(d)(1) (emphasis added). We agree with the Third and Tenth Circuits’ explanation that this statutory language requires that an employer submit evidence from which a reasonable factfin-der could conclude not simply that the employer’s proffered reasons could explain the wage disparity, but that the proffered reasons do in fact explain the wage disparity. See Stanziale, 200 F.3d at 107-08; Mickelson, 460 F.3d at 1312 (quotation and citation omitted). Thus, because the employer in an EPA action bears the burden of ultimate persuasion, once the plaintiff has established a prima facie case the employer will not prevail at the summary judgment stage unless the employer proves its affirmative defense so convincingly that a rational jury could not have reached a contrary conclusion. See Stanziale, 200 F.3d at 108; Tenkku v. Normandy Bank, 348 F.3d 737, 741 n.2 (8th Cir. 2003) (“At the summary judgment stage of the proceedings, the employer’s justification for the differences is irrelevant, unless it is strong enough to establish one of the statutory affirmative defenses as a matter of law.”). B. We turn now to consider the issue whether the claimants made a prima face showing of discrimination under the EPA. To satisfy their burden, the claimants were required to show that (1) they were paid less than one or more males, for (2) performing work of substantially equal skill, effort, and responsibility, and that (3) such work was performed under similar working conditions. Corning Glass, 417 U.S. at 195, 94 S.Ct. 2223. We hold that the claimants have made this required showing. First, the record plainly establishes, and MIA does not dispute, that the claimants were paid less than the male comparators. Cordaro’s and Green’s respective starting salaries, of $43,495 and $43,759, were lower than the starting salaries of all four male comparators. Rogers’ starting salary of $46,268 was lower than Contieello’s starting salary of $49,842.[8] The record also shows that the claimants and the male comparators performed substantially equal work. It is undisputed that the claimants and the four male comparators each held the same position as Fraud Investigators. Though sharing a job title and a job description is not dispositive of this issue, see Brobst v. Columbus Servs. Int’l, 761 F.2d 148, 155 (3d Cir. 1985), nothing in the record suggests that the male Fraud Investigators performed work requiring skill, effort, or responsibility different from that required by the work performed by the female Fraud Investigators. Indeed, MIA affirmatively admitted before the district court that the claimants performed “identical job[s] as other Insurance Fraud Investigators.” The fact that other male employees at MIA performed substantially identical work but made less money than the claimants does not require us to reach a different conclusion. An EEA plaintiff is not required to demonstrate that males, as a class, are paid higher wages than females, as a class, but only that there is discrimination in pay against an employee with respect to one employee of the opposite sex. See Fowler v. Land Mgmt. Groupe, Inc., 978 F.2d 158, 161 (4th Cir. 1992) (“A female plaintiff bears the burden of proof of establishing a prima facie case by showing [among other things] that [] her employer pays her á lower wage than a male counterpart (emphasis added)). The undisputed "facts in the present record establish that each claimant earned less than at least one male comparator performing substantially equal work. These undisputed facts alone satisfy the EEOC’s prima facie burden. Our conclusion is not altered by the fact that the male comparators were hired at higher step levels than at least one of the claimants, "allegedly based' on their background experience, relevant professional designations, and licenses or certifications. Such experience and other factors are relevant only " to any affirmative defense asserted by MIA, not to the issue whether-the EEOC has satisfied its prima facie burden. Instead, as we have explained, at this initial stage we ask only whether the claimants and the identified comparators worked jobs requiring “equal skill, effort, and responsibility,” and whether each claimant was paid less than one or more comparators. See 29 U.S.C. § 206(d)(1); Fowler, 978 F.2d at 161. As both these requirements are met here, the EEOC has established a prima facie case of wage discrimination under the EPA.[9] C. Because the claimants established a prima facie case of discrimination under the EPA, MIA was not entitled to summary judgment unless a rational" jury could not have rejected MIA’s proffered reasons for the wage disparities. See Stanziale, 200 F.3d at 107. Here, MIA asserts one affirmative defense, namely, that a factor other "than the comparators’ gender justifies the wage disparity.[10] 29 U.S.C. § 206(d)(1). In support of this defense, MIA offers two allegedly gender-neutral reasons for the disparity: (1) MIA’s use of the state’s Standard Salary Schedule, which classifies each position to a grade level and assigns each new hire to a step within that grade level; and (2) the comparators’ experience and qualifications. We conclude that MIA has not adduced evidence sufficient to require a factfinder to conclude that either of these two reasons actually occasioned the' undisputed wage disparities. MIA cannot shield itself from liability under the EPA solely because MIA uses the state’s Standard Salary Schedule and awards credit for prior state emplojhnent or a lateral transfer within the state employment system. See Brinkley-Obu, 36 F.3d at 339 n.3, 340-41, 353 (rejecting an employer’s argument that a jury verdict in the employee-plaintiffs favor should be reversed because of the employer’s gender-neutral compensation system); Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 525 (2d Cir. 1992). Although the Standard Salary Schedule is facially neutral, MIA exercises discretion each time it assigns a .new hire -to a specific step and salary range based on its review of the hire’s qualifications and experience, A fact finder faced with the present record could have determined that, when exercising this discretion, MIA at least in part based its assignment of the claimants’ step levels on their gender with a resulting diminution of their assigned starting salary. Therefore, while MIA uses a facially gender-neutral compensation system, MIA still must present evidence that the job-related distinctions underlying the salary plan, including prior state employment, in fact motivated MIA to place the claimants and the comparators on different steps of the pay scale at different starting salaries. See Stanziale, 200 F.3d at 107-08. MIA additionally argues that the pay disparities are justified by the difference between the experience and qualifications of the comparators and the claimants. As an example, MIA notes that Hurley and Conticello both earned Certified Fraud Examiner designations, which MIA had advertised as a preferred designation during the hiring process. Further, MIA observes that Hurley, Conticello, and Jacobs previously had worked for the state of Maryland, and that Pennington had over 20 years of law enforcement experience. We agree that qualifications, certifications, and employment history fall within the scope of the fourth affirmative defense which, as stated above, encompasses “a differential based on any factor other than sex.” 29 U.S.C. § 206(d)(1); see, e.g., Ritter v. Mount St. Mary’s Coll., 814 F.2d 986, 993 (4th Cir. 1987). And, certainly, the factors cited -by MIA could explain the wage disparity between the claimants and the comparators. Nevertheless,.as we,have emphasized, a viable affirmative defense under the EPA requires more than a showing that a factor other than sex could explain or may explain the salary disparity. Instead, the EPA requires that a factor other than sex in fact explains the salary disparity. The present record does not show, as a matter of law, that the reasons proffered by MIA do in fact explain the salary disparities. In particular, the record does not contain any contemporaneous evidence showing that, the decisions to award Hurley, Jacobs, and Pennington their respective starting salaries were in fact made pursuant to their aforementioned qualifications. And, although there is some contemporaneous evidence regarding Contieello’s hiring, this evidence is not sufficient to hold as a matter of law that his starting salary was assigned because of a factor other than sex. Although an official at MIA recommended that Conticello be hired at a higher starting salary than the typical investigator due to his prior experience, no evidence shows that the decision setting Conticello’s salary was actually made on that basis. Moreover, the claimants each had extensive prior investigative or law enforcement experience. At the very least, their prior experience is relevant to the position of Fraud Investigator and to the decisions fixing the claimants’ starting salaries, and creates an issue of fact for the jury to decide whether MIA in fact objectively weighed the comparators’ qualifications as being more significant than the claimants’ qualifications. For these reasons, we conclude that the district court erred in granting summary judgment in favor of MIA. Viewing the evidence in the light most favorable to the claimants, a jury would not be compelled to find that the reasons proffered by MIA were, in fact, the reasons for the disparity in pay awarded to the claimants and the comparators. MIA’s affirmative defense must be weighed by a finder of fact against the other evidence in the case. III. For these reasons, we vacate the district court’s order granting summary judgment to MIA, and remand the case for further proceedings consistent with this opinion.[11] VACATED AND REMANDED . The EEOC also identified nine other male Fraud Investigators who earned higher starting wages than Cordaro, Green, and Rogers, but the EEOC did not designate these other employees as comparators. We focus our analysis only on the four Fraud Investigators specifically identified as comparators. In addition, the EEOC identified as comparators two other males who work in a different unit within MIA, the Compliance and Enforcement Section, but who have similar.job responsibilities as Fraud Investigators: Jeffrey Gross and Maurice Xenos, Because our disposition of this appeal does not rely on a determination whether these two individuals are valid comparators, we do not address their qualifications and starting salaries. . The parties do not describe the particulars of the Certified Fraud Examiner designation, and the record does not provide any further information. . The EEOC does not appeal the district court’s denial of its motion for summary judgment. Rather, the EEOC contends only that the district court erred in granting summáry judgment to MIA. . We observe that MIA does not directly address the EEOC’s argument that the four male Fraud Investigator comparators, who earned higher salaries than the claimants and performed identical work, comprise prima facie evidence of an EPA violation. As previously noted, MIA only challenges the male Enforcement Officers the EEOC identified as comparators, an issue that we need not reach in this appeal. . The EPA is written in gender-neutral terms so that it is available to remedy discriminatory actions against both men and women. Brinkley-Obu v. Hughes Training, Inc., 36 F.3d 336, 350 n.32 (4th Cir. 1994). . The EPA burden-shifting framework is distinct from the McDonnell Douglas burden-shifting framework that we apply when reviewing claims brought under Title VII. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The McDonnell Douglas framework proceeds in three steps in which the burden of persuasion remains with the plaintiff throughout the entire analysis. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). ,In contrast, in a Title VII case, the employer need only proffer a legitimate, nondiscriminatory reason for the challenged action, and is not required to establish that the cited reason in fact motivated the employer's decision. McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. 1817. . The fact that there were other male MIA employees hired at the same grade and step as the claimants at about the same time does not change our evaluation of the male comparators identified by the EEOC. The EPA does not dictate to a plaintiff what comparator she must choose, but requires only that, for the purposes of establishing a prima facie case, she choose a comparator of the opposite sex who performs substantially equal work for greater pay. 29 U.S.C. § 206(d); see Corning Glass, 417 U.S. at 195, 94 S.Ct. 2223 (identifying the elements of an EPA prima facie case). . The dissent appears to take issue with'Congress's determination of what constitutes a prima facie case of discrimination under the EPA. We are- not free to disregard the policy choices made by Congress but, instead, must ensure that both private and public entities comply with the law as written. . During the district court proceedings, MIA argued that its use of the Standard Salary Schedule constituted a “merit system” for purposes of establishing a merit-based defense under the 'EPA. See 29 U.S.C. § 206(d)(1). On appeal, however, MIA’s brief focuses solely on the "factor other than sex” defense. We therefore do not address any merit-based defense argument previously raised because such argument has been abandoned. See Fed. R. App. P. 28(a)(6), (8) (stating that appellant's brief must contain the appellant’s "contentions and the reasons for them, with citations to the authorities and parts of the record on which- the appellant relies”); Edwards v. City of Goldsboro, 178 F.3d 231, 241 n.6 (4th Cir. 1999). . On remand, among other things, the district court should address in the first instance whether Green’s claim is timely. See 29 U.S.C. § 255(a); Nealon v. Stone, 958 F.2d 584, 591 n.5, 593 (4th Cir. 1992).