# United States Court of Appeals for the Federal Circuit

---

**GAYLE GORDON, TERESA MAXWELL,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2017-1845

---

Appeal from the United States Court of Federal Claims in No. 1:12-cv-00208-RHH, Senior Judge Robert H. Hodges, Jr.

---

Decided: September 7, 2018

---

JAMES EDGAR NICKELS, Nickels Law Firm, Sherwood, AR, argued for plaintiffs-appellants.

KARA WESTERCAMP, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by CHAD A. READLER, ROBERT EDWARD KIRSCHMAN, JR., CLAUDIA BURKE.

---

Before REYNA, LINN, and CHEN, *Circuit Judges.*

REYNA, *Circuit Judge.*

This is an Equal Pay Act case. Plaintiffs-Appellants Dr. Gayle Gordon and Dr. Teresa Maxwell, women physicians in the Department of Emergency Medicine of the Central Arkansas Veterans Healthcare System in Little Rock, Arkansas, filed claims under the Equal Pay Act. The Court of Federal Claims entered summary judgment in favor of the United States and denied summary judgment to Appellants because they failed to raise a fact issue that the difference in pay is presently or historically based on sex. *Yant v. United States*, 588 F.3d 1369 (Fed. Cir. 2009). We affirm.

## I.   BACKGROUND

Pay for doctors employed at VA hospitals is governed by 38 U.S.C. § 7431 (the "VA Pay Bill"). Under this statute, pay consists of three components: base pay, market pay, and performance pay. *Id.* § 7431(a). Base pay depends on experience with standard step increases based on tenure. *Id.* § 7431(b). Market pay is determined on a case-by-case basis and reflects various factors, including the physician's level of experience, the need for the physician's specialty at the particular facility, the relevant health care market, and any board certifications. *Id.* § 7431(c). Performance pay is paid when the physician achieves certain goals and performance objectives prescribed by the Secretary of Veterans Affairs. *Id.* § 7431(d).

The VA Pay Bill outlines a standardized process for physician compensation and separates physicians into different pay tables based on different specialties. *Id.* § 7431(e)(1)(B). Each pay table has a minimum and maximum range of compensation.

The VA Pay Bill requires a pay panel to meet at least once every two years to determine market compensation for an individual physician, but it may also convene if

there is a change in status. *Id.* § 7431(c)(5); J.A. 82–83. New pay tables are issued by the Veterans Health Administration ("VHA") national office every one to two years, and pay panels must consider the then-current pay table. Because the ranges in pay tables, i.e., minimum and maximum salaries, generally increase every year, later-hired physicians may have higher salaries than physicians hired before them, which will then be corrected when the pay panel next convenes.

Appellants Dr. Gayle Gordon and Dr. Teresa Maxwell are women physicians in the Department of Emergency Medicine at the Central Arkansas Veterans Healthcare System ("CAVHS") in Little Rock, Arkansas. Both Dr. Gordon and Dr. Maxwell were hired in 2008 as staff physicians in the emergency department for an annual pay of $195,000, slightly less than the maximum allowed by the pay table. J.A. 14. One year later, their pay had increased to reflect step increases in their base pay. As of November 2010, they were both due for pay panels to adjust their market pay. A pay panel did not convene for Dr. Gordon at that time. On December 21, 2010, a pay panel convened for Dr. Maxwell and recommended an increase in base pay and market pay. At that time, under CAVHS procedure, the pay panel's recommendation went to Dr. Margie Ann Scott, CAVHS Chief of Staff, for approval.

On December 17, 2010, it was announced that the VHA Central Office was initiating a pay freeze and that effective that same day, there would be no increases approved for any physicians' pay in anticipation of a forthcoming presidential mandate. J.A. 52. To comply with the pay freeze, Dr. Scott did not approve the December 2010 pay panel's recommendation to increase Dr. Maxwell's market pay (as well as total pay). J.A. 52.

In early 2012, Dr. Gordon and Dr. Maxwell each filed complaints with the Equal Employment Opportunity

Commission ("EEOC")[1] regarding what they believed to be unequal compensation. Dr. Gordon alleged that on February 1, 2012, she became aware that her pay was less than similarly situated male physicians that she worked with. J.A. 108–09. Dr. Maxwell, in her complaint filed in April 2012, alleged she "was subjected to an ongoing violation of the Equal Pay Act by being paid lower than male emergency room physicians." J.A. 117. Both Dr. Gordon and Dr. Maxwell identified several male doctors whom they alleged were similarly situated individuals employed as emergency department physicians that were being paid more than them. Both Dr. Gordon and Dr. Maxwell contended that sex was a factor in being paid less. J.A. 114, 122. In November 2012, an EEOC officer concluded that Dr. Gordon and Dr. Maxwell could not prove by a preponderance of the evidence that the reasons for the salary differences were pretextual, or that unlawful discrimination was the reason for the alleged disparate pay. J.A. 108–24.

The VHA pay freeze remained in place until December 2013. As required by the VA Pay Bill, pay panels continued to meet during the pay freeze, but could not recommend increases in market pay. In November and December 2013, before the pay freeze lifted, pay panels convened for Drs. Gordon and Maxwell. J.A. 53. For both doctors, the pay panel recommended no change in the

---

[1]    The EEOC is a separate avenue of relief for an Equal Pay Act claim. An individual alleging an Equal Pay Act violation may go directly to court or file an EEOC charge. *See generally Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 640 (2007) (noting that "the [Equal Pay Act] does not require the filing of a charge with the EEOC or proof of intentional discrimination"), *superseded by statute on other grounds*, Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2 (2009).

market pay rate because their roles and duties had not changed. Both doctors received increases in base pay in accordance with their longevity. Both Dr. Maxwell's and Dr. Gordon's increases were subsequently approved.

After the pay freeze lifted in December 2013, pay panels convened in February 2014 for Dr. Gordon and Dr. Maxwell to award the delayed market pay increase that they would have received in 2010 but for the pay freeze. Both doctors received increases in market pay to make their compensation "more in line with other emergency department physicians." J.A. 54. With this post-freeze market pay increase, both doctors were restored to the middle of the emergency department salary spread. J.A. 22.

In October of 2011, Dr. Gordon and Dr. Maxwell brought suit in the Court of Federal Claims ("Claims Court"), alleging that the pay discrepancies between Appellants and their male colleagues violated the Equal Pay Act ("EPA").[2] *Gordon v. United States*, 130 Fed. Cl. 604 (2017). Their discrimination case relied partly on evidence relating to Dr. Iftikhar Ali, another CAVHS physician who was hired at about the same time as Appellants to an identical position making the same salary, but received a pay raise after one year that Appellants did not receive. *Id.* at 606–07. Their case also relied on the fact that Dr. Gordon and Dr. Maxwell did not receive their biannual raises in 2010, while male doctors in the same

---

[2] Appellants initially filed suit in the Eastern District of Arkansas. *See Gordon v. Dep't of Veterans Affairs*, No. 4:11-cv-00734-BSM (E.D. Ark. Oct. 5, 2011). The case was subsequently transferred to the Court of Federal Claims. *See Gordon v. United States*, No. 1:12-cv-00208-RHH (Fed. Cl. Mar. 30, 2012); *Gordon v. Dep't of Veterans Affairs*, No. 4:11-cv-00734-BSM, Dkt. No. 12 (E.D. Ark. Jan. 27, 2012) (order transferring case).

department had. The parties filed cross-motions for summary judgment, with the Government arguing that Appellants had failed to prove a prima facie case of an EPA violation, or alternatively, that the disparities in pay were due to reasons other than sex. The Claims Court did not expressly analyze whether Dr. Gordon and Dr. Maxwell had established a prima facie case of salary discrimination under the EPA, and instead concluded that they had "not shown that discrimination was the reason for Dr. Ali's raise one year after being hired, or for the VA's delays in processing their raises in time to avoid the pay freeze." *Gordon*, 130 Fed. Cl. at 606. Dr. Gordon and Dr. Maxwell appeal. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## II. DISCUSSION

We review a decision of the Claims Court granting summary judgment de novo. *Ladd v. United States*, 713 F.3d 648, 651 (Fed. Cir. 2013). Rule 56(a) of the Rules of the United States Court of Federal Claims states that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

To make a prima facie case of an EPA violation, a plaintiff must show that the employer paid employees of opposite sexes different wages for equal work for jobs that require "equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1); *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974). This court's decision in *Yant v. United States* further requires that, as part of the prima facie case, an EPA plaintiff bears the burden of showing "that discrimination based on sex exists or at one time existed." 588 F.3d 1369, 1373 (Fed. Cir. 2009). Once an employee in an EPA case establishes a prima facie case of salary discrimination, the burden of persuasion shifts to

the employer to prove that the wage disparity was justified by one of four permissible reasons: (1) a seniority system; (2) a merit system; (3) a pay system based on quantity or quality of output; or (4) a disparity based on any factor other than sex. 29 U.S.C. § 206(d)(1).

We begin with Appellants' prima facie case of salary discrimination. Appellants must demonstrate that the CAVHS pays different wages to employees of the opposite sex; that the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and that the jobs are performed under similar working conditions. *See Corning Glass Works*, 417 U.S. at 195. Concerning whether the CAVHS pays different wages to employees of the opposite sex, Appellants point to Dr. Iftikhar Ali, whom they alleged was hired to an identical position as Appellants and initially paid the same salary. Dr. Ali received a market pay raise from the VA after only one year, whereas Appellants had only received step increases in base pay for their first two years, without any increase in market pay. J.A. 15. Appellants also point to a pay table identifying ten male ER physicians who were paid more than they were. J.A. 22. In light of Dr. Ali and the pay table, Appellants have raised a genuine issue of material fact as to whether the CAVHS pays different wages to employees of the opposite sex.

The next facet of the prima facie case is whether the male employees performed equal work on jobs requiring equal skill, effort, and responsibility, and whether the jobs were performed under similar working conditions. A "bird's eye" comparison based on the same general duties cannot establish equal work. *Wheatley v. Wicomico Cty.*, 390 F.3d 328, 333–34 (4th Cir. 2004) ("We decline to hold that having a *similar* title plus *similar* generalized responsibilities is equivalent to having *equal* skills and *equal* responsibilities."). Job titles or job classifications are not necessarily determinative in determining whether work is substantially equal for purposes of an EPA claim;

rather, the controlling factor is the actual job duties of Appellants and their comparators. *See Santiago v. United States*, 107 Fed. Cl. 154, 161 (2012). Importantly, "jobs need not be identical in every respect before the Equal Pay Act is applicable." *Corning Glass Works*, 417 U.S. at 203 n.24.

Here, Appellants point to Dr. Ali, who was hired at the same time and for the same position as Appellants, as an example of a male employee performing similar job duties under substantially the same working conditions. Appellants additionally point to a statement from Dr. James Rasch, head of the ER department, as evidence that the male doctors were performing substantially similar work; Dr. Rasch stated that "basically [ER physicians] all do the same type of work, but their qualifications may—there may be some variation in their qualifications." J.A. 23. Appellants also point to Chief of Staff Dr. Margie Scott's statement that "[t]he work provided by each of the physicians within the emergency department I would agree is equal in amount and scheduling. I'm not aware of any differences in the work schedules." J.A. 24.

The Government contends that Appellants incorrectly rely on three doctors—Drs. Kyser, Rayaz, and Snodgrass—because these doctors either are in a supervisory role, and thus have additional duties and responsibilities, or have a different role and less responsibility. Appellee's Br. 22, 25–26. This is an affirmative defense argument. Assuming the Government is correct, Appellants have alleged the existence of the seven other male doctors, including Dr. Ali, who Appellants allege are paid more than Appellants for substantially equal work. *See, e.g.*, Appellants' Opening Br. 11. The Claims Court made no finding as to whether these male doctors are proper comparators.

To survive summary judgment, Appellants need only raise a genuine issue of material fact as to whether the male doctors are comparators. The Claims Court effectively highlighted that evidence relating to Dr. Ali raises a genuine issue of material fact. *Gordon*, 130 Fed. Cl. at 611 ("Dr. Ali, a male colleague who was hired at the same time as plaintiffs, received a raise after his first year of employment while plaintiffs[] were ineligible for raises until 2010. The reason for this apparent disparity remains unclear and essentially unexplained by the parties."); *see also U.S. EEOC v. Md. Ins. Admin.*, 879 F.3d 114, 122 (4th Cir. 2018) ("The undisputed facts in the present record establish that each claimant earned less than at least one male comparator performing substantially equal work. These undisputed facts alone satisfy the EEOC's prima facie burden.").[3] The record shows that Appellants have raised a fact issue that CAVHS employees of different sex performing equal work on jobs requiring equal skill, effort, and responsibility under similar working conditions were paid differently.

To make their prima facie case, however, Appellants must also establish that the pay differential between the similarly situated employees is "historically or presently based on sex." *Yant*, 588 F.3d at 1372. Appellants point to no evidence that the pay differential complained of was based on sex, either historically or presently. Instead,

---

[3] To be clear, merely identifying one comparator alone may not necessarily establish a prima facie case of an EPA violation in every case. *See, e.g., Brousard-Norcross v. Augustana Coll. Ass'n*, 935 F.2d 974, 979 (8th Cir. 1991) (affirming summary judgment and finding that "a submissible Equal Pay Act claim has not been established" where "the plaintiff's salary is marginally smaller than one comparator and marginally larger than another comparator").

Appellants argue that the evidence of clear pay disparities between Appellants and the similarly situated male doctors permits a fact finder to draw an inference that discrimination based on sex exists or existed. Reply Br. 6–7. This court in *Yant*, however, held that plaintiffs bear the burden of showing that the complained-of pay differential is based on sex; allowing a plaintiff to satisfy this requirement merely through an inference drawn from the statutory elements of the prima facie case under the EPA is not sufficient. Thus, because Appellants fail to establish a prima facie case of an EPA violation,[4] summary judgment is appropriate.

---

[4] The Government further argues that, even if Appellants had successfully established their prima facie case, the Claims Court correctly found the pay discrepancy to be, at least partly, based on a factor other than sex. Appellee's Br. 31. Specifically, the record reflects that the VHA pay freeze that lasted from December 2010 to December 2013 prevented Appellants from receiving market pay raises during that period that would have brought them closer to their male peers. The Government asserts that, but for the pay freeze, the pay panel's recommended pay increase for Dr. Maxwell in 2010 would have made her pay equal to three of the male comparators on which she relies. *See* J.A. 22, 52.

We note that the pay freeze does not explain why Dr. Ali received a raise in 2009, a year earlier than the similarly situated and simultaneously hired Appellants were even considered for a raise. As noted above, the Claims Court recognized that the Government provided no explanation in the record for Dr. Ali. *Gordon*, 130 Fed. Cl. at 611. Even so, the evidence in the record does not support a finding that the delay in Dr. Gordon's and Dr. Maxwell's raises, as opposed to Dr. Ali's early raise, was based on sex. *Yant*, 588 F.3d at 1372.

**AFFIRMED**

Costs

No costs.

# United States Court of Appeals
# for the Federal Circuit

---

**GAYLE GORDON, TERESA MAXWELL,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2017-1845

---

Appeal from the United States Court of Federal Claims in No. 1:12-cv-00208-RHH, Senior Judge Robert H. Hodges, Jr.

---

REYNA, *Circuit Judge*, additional views.

I write separately to express my belief that this court's holding in *Yant v. United States*, 588 F.3d 1369 (Fed. Cir. 2009), should be revisited and the requirement that plaintiff prove, as part of their prima facie case under the Equal Pay Act, that the pay differential is presently or historically based on sex be reversed. The *Yant* requirement that a plaintiff bringing suit additionally show that the complained-of difference in pay is presently or historically based on sex improperly shifts the burden from the employer to *disprove* discrimination to the plaintiff to *prove* discrimination. Such a shift is improper under the statute and at odds with Supreme Court precedent and the law of other circuits.

In its seminal case on the Equal Pay Act, 29 U.S.C. § 206(d) *et seq.* ("EPA"), the Supreme Court in *Corning Glass Works v. Brennan* characterized the EPA as "broadly remedial," and instructed courts to construe and apply it "so as to fulfill the underlying purposes which Congress sought to achieve"—namely, to "remedy what was perceived to be a serious and endemic problem of [sex-based] employment discrimination in private industry." 417 U.S. 188, 195, 208 (1974). The EPA's basic structure and operation is "straightforward": the plaintiff first carries the burden of showing that an employer pays different wages to employees of opposite sexes "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Id.* at 195. To establish a prima facie case of wage discrimination under the EPA, "it is merely necessary that the plaintiff show that an employer paid different wages to employees of the opposite sex for substantially equal work." *Molden v. United States*, 11 Cl. Ct. 604, 610–11 (1987). Once the plaintiff has put forth this prima facie case, the burden shifts to the employer "to show that the [pay] differential is justified under one of the Act's four exceptions." *Corning Glass Works*, 417 U.S. at 196.

*Yant* imposes an extra-statutory requirement onto the EPA plaintiff's prima facie case. As noted by then-Circuit Judge Prost in her concurrence, the decision in *Yant* "imports a *novel* requirement into the plaintiff's prima facie case in granting summary judgment." *Yant*, 588 F.3d at 1375 (Prost, J., concurring) (emphasis added). Before *Yant*, the EPA simply required a plaintiff to show wage discrimination between employees of different sex— i.e., that employees of different sex were paid differently for the same work under substantially similar conditions. *Yant* requires not only that the plaintiff show wage discrimination, but also *sex* discrimination—i.e., that the *reason* for the difference in pay is due to sex.

*Yant* concerned a mixed-sex group of plaintiffs. Nurse practitioners employed by the United States Department of Veterans Affairs brought suit under the EPA alleging that, as predominantly female nurse practitioners, they were paid at a lower rate than the predominantly male physician assistants, performing jobs of equal skill, effort, and responsibility under similar working conditions. *Yant v. United States*, 85 Fed. Cl. 264, 266 (2009). The summary judgment record revealed that the plaintiffs' class was composed of 80% females, while the higher-paid physician assistants were 40% female. *Id.* at 272. The Court of Federal Claims granted summary judgment for the Government, concluding that although a group of plaintiffs does not have to be exclusively one gender to bring an EPA claim, the *Yant* plaintiffs had failed to establish their prima facie case; broadly, the fact that almost half of the putatively disadvantaged sex participated in the higher-paid group was sufficient to deny liability at summary judgment because the plaintiffs failed to establish that the employer paid different wages to employees of opposite sexes. *See id.*

This court affirmed on different grounds. Relevant to this court's analysis was the fact that the two positions at issue were on different pay scales, one national (the physician assistant pay scale) and one regional (the nurse practitioner pay scale). The differing pay scales resulted in the salary for nurse practitioners exceeding that of the physician assistants in some parts of the country, and vice versa in other parts. *Yant*, 588 F.3d at 1373. The court concluded that "the pay differential between [nurse practitioners] and [physician assistants] is based on two separate pay scales," and that the plaintiffs "did not present any evidence that the decision to pay [physician assistants] on a national scale and [nurse practitioners] on a regional scale had any basis in sex, historically or presently." *Id.* The majority acknowledged that EPA plaintiffs need not present proof of discriminatory intent,

but explained that they must nevertheless make a showing that wage "discrimination based on sex exists or at one time existed" as part of their prima facie case. *Id.* The court concluded that the plaintiffs had failed to establish a prima facie case of such discrimination because "[m]ere reliance on gender ratios of two groups [of employees] does not establish discrimination based on sex," and because petitioners presented no evidence that the wage differential between the two employee groups was based upon sex. *Id.* at 1373–74. Because the plaintiffs failed "to raise a genuine issue of material fact that the pay differential between [nurse practitioners and physician assistants] is based on sex," this court found that the plaintiffs "failed to make a prime [sic] facie case." *Id.* at 1374.

Prior to *Yant*, once a plaintiff established a prima facie case under the EPA, discrimination based on sex was presumed. *E.g.*, *Cooke v. United States*, 85 Fed. Cl. 325, 342 (2008) ("Once the plaintiff has met this initial burden, '*the statute presumes discrimination* and requires defendant to proffer successfully an affirmative defense' based on one of the statute's four exceptions." (emphasis added) (quoting *Moorehead v. United States*, 84 Fed. Cl. 745, 747 (2008))); *see also Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 344 (4th Cir. 1994) ("Under the Equal Pay Act, the plaintiff creates a presumption of discrimination when she establishes a *prima facie* case."). In other words, the prima facie case of a pay differential between similarly situated employees of different sex *itself* constitutes evidence of discrimination based on sex.

*Yant* decidedly changed this standard by requiring, as part of the prima facie case, evidence that the pertinent pay differential is based on sex. *Compare Moorehead*, 84 Fed. Cl. at 748 ("[T]he Government's main argument is that the reasons for any pay disparity are not gender based. This argument, however, is not pertinent to whether plaintiff can establish a prima facie case." (cita-

tion omitted)), *and Molden*, 11 Cl. Ct. at 610 ("Defendant contends that an element of establishing a prima facie case is that the wage disparities of an Equal Pay Act violation must be based on sex discrimination. This contention is not supported by the language of the Act or from judicial interpretations of the law."), *with Yant*, 588 F.3d at 1374 ("Because the Yant plaintiffs fail to raise a genuine issue of material fact that the pay differential between [nurse practitioners] and [physician assistants] is based on sex, they have failed to make a prime [sic] facie case."), *and Branch v. United States*, 101 Fed. Cl. 411, 414 (2011) ("To establish an EPA violation, a plaintiff must show (1) 'past or present discrimination based on sex,' and (2) that he 'performed work equal in skill, effort and responsibility' to that of a comparator." (quoting *Yant*, 588 F.3d at 1374)).

*Yant* shifts the burden onto the plaintiff to affirmatively prove discrimination, rather than on the employer to disprove discrimination. The Supreme Court in *Corning Glass* made clear that the EPA plaintiff has the burden of initially showing that the employer pays workers of one sex more than workers of the opposite sex for equal work. 417 U.S. at 196. After this prima facie case is established, the burden of both production and persuasion shift to the employer to show, as an affirmative defense, that the pay differential is due to one of four reasons permitted under the statute, namely a seniority, merit, or production output system, or any differential based on a factor other than sex. *Id.* at 196–97; *Brinkley-Obu*, 36 F.3d at 344. "[T]he risk of nonpersuasion rests with the employer on the ultimate issue of liability," *Fallon v. Illinois*, 882 F.2d 1206, 1213 (7th Cir. 1989), and accordingly, once the plaintiff raises a prima facie case of pay discrimination, unless the employer can prove that "one or more affirmative defenses are applicable . . . , the plaintiff will prevail." *EEOC v. Md. Ins. Admin.*, 879 F.3d 114, 120 (4th Cir. 2018).

Thus, *Yant*'s requirement that the plaintiff prove that the complained-of pay differential is based on sex is nonsensical given the employer's clear burden under the statute and *Corning Glass* to disprove that any pay differential between employees of opposite sex performing substantially the same work is based on sex. No other circuit imposes such a requirement on the plaintiff. *See, e.g.*, *Rizo v. Yovino*, 887 F.3d 453, 459 (9th Cir. 2018); *Md. Ins. Admin*, 879 F.3d at 120; *Mickelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1312 (10th Cir. 2006); *Stanziale v. Jargowsky*, 200 F.3d 101, 107–08 (3d Cir. 2000); *Brinkley-Obu*, 36 F.3d at 344; *Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1136 (5th Cir. 1983).

*Yant*'s requirement that an EPA plaintiff must affirmatively prove that a pay differential between employees of different sexes is historically or presently based on sex is at odds with the broadly remedial nature of the EPA to redress wage discrimination between employees of different sex. Because its holding is counter to the statutory structure, the Supreme Court's precedent, and the law of other circuits, I urge this court to consider revisiting this precedent.