In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 06-2198

KIMBERLY M. SIMS-FINGERS,

*Plaintiff-Appellant*,

*v.*

CITY OF INDIANAPOLIS,

*Defendant-Appellee*.

_____

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:04-cv-01952-VSS-SEB—**V. Sue Shields**, *Magistrate Judge*.

_____

ARGUED FEBRUARY 15, 2007—DECIDED JUNE 27, 2007

_____

Before EASTERBROOK, *Chief Judge*, and POSNER and KANNE, *Circuit Judges*.

POSNER, *Circuit Judge*. The plaintiff, the manager of a six-acre park owned by the Indianapolis and Marion County park system, complains that she is paid less than some of the male managers in the park system and that the difference in pay violates the Equal Pay Act. (She also claims that it violates Title VII; we take up that claim at the end of our opinion.) The Equal Pay Act requires an employer to pay his male and female employees at the same rate "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which

are performed under similar working conditions." 29 U.S.C. § 206(d)(1). The district court granted summary judgment for the city on both the Equal Pay Act and Title VII claims.

There are 32 parks in the park system and 27 park managers. The plaintiff concedes that some female managers are paid more than some male managers; in fact, in 2003 she herself was paid more than 7 of the 16 male managers and less than 7 of the female ones, while another of the female managers ranked second out of all the managers, which meant that she outranked 15 of the 16 men. The average salary difference between the male and female managers is just a shade more than $100 in favor of the men, a difference of only one-third of one percent.

Obviously these figures do not support an inference of sex discrimination. But the Equal Pay Act defines discrimination as paying at different rates for "equal" work, 29 U.S.C. § 206(d)(1), and this implies that our plaintiff can complain about being paid less than a male manager for equal work and that any male managers in the Indianapolis park system who are paid less than female managers for equal work also can complain—equally. *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974); *Fyfe v. City of Fort Wayne*, 241 F.3d 597, 599-601 (7th Cir. 2001); *Schwartz v. Florida Bd. of Regents*, 807 F.2d 901, 902-03 (11th Cir. 1987). But the plaintiff has failed to make a prima facie case of unequal pay for equal work.

The Indianapolis park system is heterogeneous. There are large parks and small, parks that have swimming pools or ponds and parks that do not, parks that generate significant income and ones that do not, and parks that have greater or fewer employees than other parks or greater or fewer patrons. Because the parks are so different, the skills and effort required of the managers and the

amount of responsibility that they bear vary. Managing a park that has a swimming pool involves greater responsibility than managing a park that has no water, because of the danger of a patron's drowning and the difficulty of proper maintenance of a large pool. Similarly, the more money the park takes in, the more responsibility the manager's job entails, since he can get into serious trouble if revenue dries up or money is discovered missing from the till. Eight of the nine male managers who are paid more than the plaintiff manage larger parks than she that either have water facilities or generate significantly higher income and patronage than her small park.

She focuses on the higher salary paid the ninth male manager, Robinson. At a time when she was paid $34,373.56 a year, he was paid $35,000.16—even though the park that he was assigned to manage had not opened yet. (It has since. www.indygov.org/eGov/City/DPR/Parks/List/Bethel+Park.htm (visited June 12, 2007).) However, during the waiting period he had to work with neighborhood associations to plan programs for the park. It was to be a large park—at least 100 acres, almost 17 times larger than her park, and to offer the following amenities not available at her park:

> Game Room
>
> Computer Room
>
> Fitness Center
>
> Horseshoe Pits (5)
>
> Baseball Diamond
>
> Playground
>
> Football Field
>
> Seasonal Swimming Pool

In addition, Robinson has a master's degree in human relations, a relevant credential for such an "outreach" effort. There is no basis on which a reasonable trier of fact could find that such a job involves no greater skill, effort, and responsibility than the plaintiff's job of running a very small, established park having much more limited facilities than were planned for Robinson's park.

Moreover, in determining whether equal pay is being paid for equal work, the size of the pay differential, though not determinative, *Hodgson v. American Bank of Commerce*, 447 F.2d 416, 420 (5th Cir. 1971), is highly relevant. *Brousard-Norcross v. Augustana College Association*, 935 F.2d 974, 979 (8th Cir. 1991); *Flockhart v. Iowa Beef Processors, Inc.*, 192 F. Supp. 2d 947, 970-72 (N.D. Iowa 2001); compare *Peltier v. City of Fargo,* 533 F.2d 374, 375-76, 378-79 (8th Cir. 1976). The smaller the differential, the more likely it is to be justified by a small difference in the work. The pay differential between the plaintiff and Robinson is less than 2 percent, and we do not see how anyone could say that her work and his are so far equal that it should be inferred that he is overpaid relative to her.

Furthermore, when jobs are heterogeneous a suit under the Equal Pay Act is in danger of being transmogrified into a suit seeking comparable pay—a theory of liability for sex discrimination under Title VII that has been rejected by this and the other courts to consider it. *Loyd v. Phillips Bros., Inc.*, 25 F.3d 518, 524-25 (7th Cir. 1994); *American Nurses' Association v. Illinois,* 783 F.2d 716 (7th Cir. 1986); *AFSCME v. Washington*, 770 F.2d 1401, 1406-07 (9th Cir. 1985); *Lemons v. City of Denver*, 620 F.2d 228, 228-30 (10th Cir. 1980). The comparable-pay movement asks that wages in different jobs be proportional to the differences between the jobs in the difficulty, required skill level,

amenities, and so forth. Paula England, *Comparable Worth: Theories and Evidence* 1 (1992); *Washington County v. Gunther*, 452 U.S. 161, 166 and n. 6 (1981); *American Nurses' Association v. Illinois*, *supra*, 783 F.2d at 719-20. The concern is that traditional women's jobs, such as secretarial work, are paid less relative to traditional men's jobs, such as driving a truck, than the objective differences between the jobs merit. Liability on the basis of a theory of comparable worth is even less tenable under the Equal Pay Act than under Title VII, because the former Act requires equal pay only for equal work, and the whole idea of the comparable-worth movement is that equal pay should sometimes be required for unequal work. *Beavers v. American Cast Iron Pipe Co.*, 975 F.2d 792, 800-01 (11th Cir. 1992); cf. *Wernsing v. Department of Human Services*, 427 F.3d 466, 467-70 (7th Cir. 2005); *EEOC v. Madison Community Unit School District*, 818 F.2d 577, 580, 582 (7th Cir. 1987).

Managing a 100-acre park with a swimming pool and managing a six-acre park with a basketball court are not as different as working as a secretary and driving a truck, but they are sufficiently different that deciding how far the salaries for the two jobs "should" differ strains the competence of the litigation process. Managing a park with a pool is, as we said, a more responsible job than managing a park without one, other things being the same. How large a wage premium should that greater responsibility command? Who knows? Our society leaves such decisions to the market, to the forces of supply and demand, because there are no good answers to the normative question, or at least no good answers that are within the competence of judges to give.

The proper domain of the Equal Pay Act consists of standardized jobs in which a man is paid significantly

more than a woman (or anything more, if the jobs are truly identical) and there are no skill differences. An example might be two sixth-grade music teachers, having the same credentials and experience, teaching classes of roughly the same size in roughly comparable public schools in the same school district. *Buntin v. Breathitt County Board of Education*, 134 F.3d 796, 797, 799 (6th Cir. 1998); *Brock v. Georgia Southwestern College*, 765 F.2d 1026, 1032-35 (11th Cir. 1985). The jobs of the managers of the different parks in the sprawling Indianapolis park system are nonstandard, mainly because the parks are so different from one another.

We turn last and briefly to the Title VII claim. Title VII does not require equal work, but neither does it allow for recovery on the basis of the theory of comparable worth. So merely showing that a man and a woman who perform different jobs for the same employer are paid differently does not get a Title VII plaintiff to first base. As that is all the evidence of sex discrimination that the plaintiff has presented, her Title VII claim was properly dismissed as well. *Cullen v. Indiana University Board of Trustees*, 338 F.3d 693, 704 (7th Cir. 2003); *Loyd v. Phillips Bros., Inc., supra*, 25 F.3d at 524-25; *Buettner v. Arch Coal Sales Co., Inc.*, 216 F.3d 707, 718-19 (8th Cir. 2000). We therefore need not consider the bearing of the Supreme Court's recent decision in *Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S.Ct. 2162, 2165-69 (2007), on the timeliness of the plaintiff's Title VII claim; the decision has no bearing on her claim under the Equal Pay Act. *Id*. at 2165, 2176.

AFFIRMED.

A true Copy:

      Teste:

                          _____

                          *Clerk of the United States Court of*
                             *Appeals for the Seventh Circuit*