# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
November 18, 2020

Lyle W. Cayce
Clerk

No. 20-50446
Summary Calendar

WENDY FOSTER,

*Plaintiff—Appellant*,

*versus*

FERRELLGAS, INCORPORATED,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:18-CV-204

Before HAYNES, WILLETT, and HO, *Circuit Judges*.

PER CURIAM:*

Wendy Foster brought racial discrimination and retaliation claims against her former employer, Ferrellgas, Incorporated ("Ferrellgas"). The district court concluded that Foster had not established a prima facie case of discrimination or retaliation, and that in any event Foster had not rebutted

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 20-50446

Ferrellgas's proffered legitimate reasons for its actions. Because we agree that Foster failed to make out a prima facie case on any of her claims, we AFFIRM.

## I.  Background

Foster, who alleges that she suffered racial discrimination as a black woman, was hired in December 2014 as a Crude Logistics Scheduler in the Midland, Texas office of Bridger Administrative Services, LLC ("Bridger"), an oilfield hauler.  As a Crude Logistics Scheduler, Foster used a computer system to schedule and dispatch trucks.  Several months into Foster's tenure, Bridger was acquired by Ferrellgas, a propane distributor and retailer.  At that time, Foster was hired by Ferrellgas with no meaningful change in her job functions.

Prior to receiving her job offer from Bridger, Foster interviewed with Thomas Glenn, the Regional Operations Manager for the Midland office. Foster alleges that at the interview, Glenn told her that her starting salary would be $50,000 per year, but that within thirty days her salary would increase to $65,000 per year.  Yet after thirty days had gone by, Foster still had not received her promised raise.  When she complained to Glenn, he told her he would get back to her.

Glenn was eventually fired and replaced by Lyle Lowrance.  Foster complained repeatedly to Lowrance about her missing raise, but to no avail. In her deposition, Foster testified that Lowrance advised her that she was not getting the raise because she was black. However, she also indicated that Lowrance was not responsible for denying her the raise, as she stated that he had been trying to help her get the raise.  By Foster's account, Lowrance did not identify who determined Foster's salary, nor did he explain why he believed Foster was being discriminated against due to her race.

No. 20-50446

Lowrance was eventually fired too, and Foster continued to complain about her raise to her new supervisors, Bart Larson and Larry Garren, as well as other Ferrellgas managers. She last complained about her raise during a "personal meeting" with Larson and Garren on February 8, 2016.

Ferrellgas terminated Foster on February 15, 2016. According to Ferrellgas, Foster was terminated as part of a larger reduction in force due to a company-wide financial crisis. During Foster's employment, Ferrellgas employed at least eight white Crude Logistics Schedulers, all of whom made at least $60,000 per year. Foster recalled training several white women who were hired as dispatchers after she started, and she overheard these women say that they were making $65,000 per year. Ferrellgas's records showed that there were two white female Crude Logistics Schedulers making $65,000 per year during the period of Foster's employment.

In September 2016, Foster filed a discrimination charge with the Texas Workforce Commission and the Equal Employment Opportunity Commission.[1]

Foster filed suit in November 2018. As relevant here, she alleged that Ferrellgas had paid her less than her white colleagues and terminated her due to her race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17, and had terminated her in retaliation for complaining about her disparate treatment, also in violation of Title VII. Ferrellgas moved for summary judgment, which the district court granted. Foster timely appealed.

---

[1] Foster amended her charge in January 2017, alleging the same discriminatory actions as in her September 2016 charge.

3

## II.    Discussion

We review a district court's grant of summary judgment de novo, viewing all admissible evidence "in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor." *Kariuki v. Tarango*, 709 F.3d 495, 501 (5th Cir. 2013) (quotation omitted).  A district court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Plaintiffs may prove employment discrimination "by direct or circumstantial evidence, or both." *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 340 (5th Cir. 2019) (quotation omitted).  Where plaintiffs rely on circumstantial evidence, courts employ the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  *Nall*, 917 F.3d at 340.  Under *McDonnell Douglas*, the plaintiff must first present a prima facie case of discrimination by showing that she:

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees outside the protected group.

*Roberson-King v. La. Workforce Comm'n, Off. of Workforce Dev.*, 904 F.3d 377, 381 (5th Cir. 2018) (cleaned up).  If the plaintiff makes out her prima facie case, "the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the employment decision."  *Id.* (quotation omitted).  If the employer provides such a reason, "the burden shifts back to the plaintiff to show the reason is merely pretextual."  *Id.* (quotation omitted).

No. 20-50446

The district court ruled that Foster did not make out her prima facie case on her disparate pay claim because she did not identify evidence showing a similarly situated employee of a different race who was better paid. Following the same reasoning, the district court dismissed Foster's discriminatory termination claim because Foster did not show that she was similarly situated to any of the employees Ferrellgas retained after her termination. To show that a fellow employee was similarly situated, a Title VII plaintiff must demonstrate that they were in "nearly identical" circumstances. *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001) (quotation omitted). This "inquiry is case-specific and requires us to consider the full variety of factors that an objectively reasonable decisionmaker would have found relevant in making the challenged decision." *Lindquist v. City of Pasadena*, 669 F.3d 225, 234 (5th Cir. 2012) (cleaned up); *see also Spencer v. Va. State Univ.*, 919 F.3d 199, 207 (4th Cir. 2019) (explaining that when evaluating employee similarity under Title VII, "courts consider whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications" (quotation omitted)), *cert. denied*, 140 S. Ct. 381 (mem.) (2019).

Although Foster shared a job title and a supervisor with the white employees she identified as being in similarly situated positions, she provided virtually no evidence concerning their relevant qualifications, nor did she establish that they performed comparable work. Indeed, at her deposition, Foster repeatedly disclaimed any knowledge of what her co-workers did. Further, even though Foster trained higher-paid colleagues, this evidence does not exclude the possibility that these individuals had more industry experience, superior education, or different job responsibilities. Thus, the

No. 20-50446

district court properly granted summary judgment on Foster's disparate pay and discriminatory termination claims.[2]

Title VII retaliation claims are also evaluated under the *McDonnell Douglas* framework. *Septimus v. Univ. of Hous.*, 399 F.3d 601, 608 (5th Cir. 2005). To make out a prima facie case of retaliation, a plaintiff must establish that: "(1) she engaged in protected activity; (2) the employer took a materially adverse action against her; and (3) a causal link exists between her protected activity and the adverse action." *Wheat v. Fla. Par. Juv. Just. Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016).

Foster contends that she engaged in protected activity by complaining to her supervisors about being paid less than her white co-workers. Because Title VII protects informal complaints so long as the plaintiff "reasonably believed" the challenged employment practice violated Title VII, Foster likely engaged in protected activity to the extent she made such complaints. *EEOC v. Rite Way Serv., Inc.*, 819 F.3d 235, 240 (5th Cir. 2016); *see* 42 U.S.C. § 2000e-3(a) (making it unlawful to retaliate against any employee for "oppos[ing] any practice made an unlawful employment practice by this

---

[2] On appeal, Foster argues that Lowrance's statement that she would not receive a raise because of her race obviates the need to make out a *McDonnell Douglas* prima facie case based on circumstantial evidence. Foster did not present a direct evidence claim to the district court, and we will not consider it for the first time on appeal. *See Celanese Corp. v. Martin K. Eby Constr. Co.*, 620 F.3d 529, 531 (5th Cir. 2010) ("The general rule of this court is that arguments not raised before the district court are waived and will not be considered on appeal."). Even if we did consider it, in order to qualify as direct evidence of discrimination, the comment must, among other things, have been "made by an individual with authority over the employment decision at issue." *Clark v. Champion Nat'l Sec.*, 952 F.3d 570, 581 (5th Cir. 2020), *cert. denied*, 2020 WL 6385801 (mem.) (Nov. 2, 2020); *see also Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 405 (5th Cir. 2001). Foster's admission that Lowrance did not decide her salary and that she did not know the basis for his statement precludes consideration of this statement as direct evidence of discrimination.

subchapter"). Further, there is no dispute that Ferrellgas took a materially adverse action against Foster by firing her.

Nevertheless, Foster did not provide evidence raising a fact issue on causation. Foster asserts that because she complained to Larson and Garren about her pay one week before her termination, there is sufficient temporal proximity between her protected activity and the adverse action to infer retaliatory animus. We have recognized that "timing alone" is enough to establish causation at the prima facie stage if "the protected act and the adverse employment action [are] very close in time." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948–49 (5th Cir. 2015) (cleaned up) (holding that protected activity and adverse action six-and-a-half weeks apart were sufficiently close to demonstrate causation). But Foster has presented no evidence that she engaged in protected activity during the relevant meeting with Larson and Garren. Rather, she avers only that she "asked again about [her] raise," without any reference to claims of racially disparate treatment. As the meeting with Larson and Garren does not qualify as protected activity, its proximity to Foster's discharge does not support an inference of retaliatory intent. Because Foster does not specify the date of any other meeting where she purportedly engaged in protected activity, there is insufficient evidentiary support of temporal proximity to raise a genuine issue of material fact on causation.[3]

The district court properly determined that Foster did not raise a fact issue that would demonstrate a prima facie case of discrimination or

---

[3] Foster argues that there is additional evidence in the record that establishes causation, including Lowrance's statement described above. Yet once again, Foster did not present this argument to the district court, and thus we will not consider it on appeal.

No. 20-50446

retaliation.  Thus, there is no need to consider the validity of Ferrellgas's explanations for Foster's salary and termination.  We AFFIRM.