**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-1848

ELIZABETH POLAK, individually and on behalf of persons similarly situated,

Plaintiff - Appellant,

and

DEBRA TRENT; NICOLE TILLEY; LYNNE E. SMITH; CASSAUNDRA M. PORTER; LEANN K. MORAN, individually and on behalf of persons similarly situated; VALERIE MCGEE; SARAH T. LONG; LAUREN LINVILLE; SHERYL A. KATTAN, individually and on behalf of persons similarly situated; ROBINA F. JORDAN; REBECCA SUE HINES; KAREN HALEY-WINGATE; MARYBETH M. GLASER; CASSANDRA FRYSINGER; HEATHER Z. EVANS; JUNE R. ERWIN; LISA A. ELLIS; PAMELA DERK; D. LAURA CORL; ROSALIND A. CHAPLIN; BRENDA L. BROWN; BETSY K. BOWLES; SHARON ALLEN; JOY D. ABEL; ELIZABETH C. ABE, individually and on behalf of persons similarly situated,

Plaintiffs,

v.

VIRGINIA DEPARTMENT OF ENVIRONMENTAL QUALITY,

Defendant - Appellee,

and

VIRGINIA DEPARTMENT OF HUMAN RESOURCE MANAGEMENT, VDHRM/COMMONWEALTH OF VIRGINIA,

Party-in-Interest.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. John A. Gibney, Jr., Senior District Judge. (3:20-cv-00270-JAG)

_____

Argued: October 26, 2022                                  Decided: January 17, 2023

_____

Before NIEMEYER, DIAZ, and RUSHING, Circuit Judges.

_____

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge Diaz and Judge Rushing joined.

_____

**ARGUED:** Tim Schulte, SHELLEY CUPP SCHULTE, P.C., Richmond, Virginia, for Appellant. Brian Garth Muse, SANDS ANDERSON, PC, Richmond, Virginia, for Appellee. **ON BRIEF:** Sydney E. Rab, SYDNEY E. RAB LAW FIRM, Richmond, Virginia; Timothy E. Cupp, SHELLEY CUPP SCHULTE, P.C., Harrisonburg, Virginia, for Appellant. Michelle S. Kallen, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia; Wade T. Anderson, SANDS ANDERSON, PC, Richmond, Virginia, for Appellee.

_____

NIEMEYER, Circuit Judge:

Elizabeth Polak, a longtime employee of the Virginia Department of Environmental Quality ("DEQ"), commenced this action against DEQ, claiming that it paid her less than it paid a male employee with the same position doing equal work, in violation of the Equal Pay Act.

The district court entered summary judgment against Polak, concluding that she lacked evidence to demonstrate that any higher-paid male employee was doing work "virtually identical" to the work she was doing. Indeed, the court explained that the record showed that the male employee whom Polak had identified as a comparator was doing different and more complex work than she was, such that she could not show that she was paid less for equal work.

Based on a careful review of the summary judgment record, we agree with the district court and affirm.

I

For ten years, Elizabeth Polak was employed by DEQ as a "coastal planner," executing federally funded Virginia programs for coastal management. The federal funds were provided through specific grants that had to be applied for each year, and Polak's role involved managing some of those grants.

Polak was hired in May 2009 and served on a team of six members, one of whom was the Program Manager, Laura McKay. Polak was hired at a starting salary of $43,000, which was a substantial increase over her former job but was near the bottom of the salary

"pay band" for which her position qualified. Her pay, however, did increase over the years such that she was paid $56,325 when she ended her employment with DEQ in 2019.

During her tenure at DEQ, Polak worked closely with Henry Moon, another coastal planner on the team, who had been working at DEQ since 2002. Although Polak believed that she and Moon had the same position and that they were doing essentially the same work, Moon was paid more. At the time Polak left DEQ, Moon was paid $69,000 per year.

Polak and three other women commenced this action in April 2020 against DEQ, alleging that it had been paying them, as well as other female employees, "lower wages than those paid to their male colleagues for performing equal work," in violation of the Equal Pay Act of 1963, 29 U.S.C. §§ 206(d)(1) and 215(a)(2). Although Polak originally brought her claim not only on her own behalf but also on behalf of a class of others similarly situated, the class claims and other plaintiffs' claims were dismissed without prejudice, leaving only Polak's individual claim in the case. Polak requested injunctive relief, as well as damages consisting of back pay, liquidated damages, prejudgment interest, and a loss of value under her retirement program.

After discovery, DEQ filed a motion for summary judgment, arguing that Polak, in identifying Moon as a comparator, had "failed to identify an appropriate comparator performing substantially equal work, as required under the Equal Pay Act," and that, in any event, "the salary differences between [Polak] and [Moon] [were] readily explained by 'factors other than sex,' specifically their respective prior pay histories."

In an order dated July 7, 2021, the district court granted DEQ's motion, relying solely on the ground that Moon, the comparator Polak had identified, was not "a proper

4

comparator" for purposes of establishing a claim under the Equal Pay Act. The court acknowledged that "Polak and Moon both worked as coastal planners at DEQ's central office" but concluded that "the undisputed evidence show[ed] that they [did] not 'have virtually identical jobs.'" The court explained that a plaintiff in Polak's position could, with sufficient evidence, "establish that she and a purported comparator had substantially similar jobs even though they did different tasks on different grants for different stakeholders," but it noted that Polak had failed to "cite evidence to establish that [kind of] similarity" and had instead relied on only "general assertions" "at a high level of abstraction." In short, the court concluded that "Polak [did not] establish a prima facie . . . claim [under the Equal Pay Act] because" a jury could not find that Moon was an adequate comparator.

From the district court's judgment, Polak filed this appeal.

## II

Polak contends essentially that she presented evidence — relying mostly on her own declaration — that created a question of fact for a jury as to whether Henry Moon was an adequate comparator for her claim under the Equal Pay Act.

The Equal Pay Act prohibits an employer from "discriminat[ing] . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which [it] pays wages to employees of the opposite sex . . . *for equal work* on jobs the performance of which requires *equal skill, effort, and responsibility*, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1) (emphasis added).

5

An exception is provided, however, "where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." *Id.* The Act, in short, "prohibits gender-based discrimination by employers resulting in unequal pay for equal work." *EEOC v. Md. Ins. Admin.*, 879 F.3d 114, 120 (4th Cir. 2018).

To establish an Equal Pay Act claim, the plaintiff "must make an initial (*i.e.*, prima facie) showing of three elements: (1) the [employer] paid higher wages to an employee of the opposite sex who (2) performed equal work on jobs requiring equal skill, effort, and responsibility (3) under similar working conditions." *Spencer v. Va. State Univ.*, 919 F.3d 199, 203 (4th Cir. 2019). "This initial showing permits an inference that a pay disparity was based on sex discrimination," an "inference [that] stands even without the support of any evidence of discriminatory intent." *Id.* If a plaintiff establishes a prima facie case, "the burdens of production and persuasion shift to the defendant-employer to show that the wage differential was justified by one of the statutory defenses," and if it fails to establish such an affirmative defense, "the plaintiff will prevail." *Evans v. Int'l Paper Co.*, 936 F.3d 183, 196 n.6 (4th Cir. 2019).

This appeal focuses on the second element of a prima facie case — *i.e.*, the requirement that Polak establish that she and Moon, her proffered comparator, performed "equal work" on jobs requiring "equal skill, effort, and responsibility." We have stressed with respect to that element that "[e]quality under the Act is a demanding threshold requirement." *Spencer*, 919 F.3d at 203. "Similarity of work is not enough"; instead, the proffered "comparator [needs] to have performed work '*virtually identical*' (or the apparent

6

synonym, '*substantially equal*') to the plaintiff's in skill, effort, and responsibility." *Id.* at 203–04 (emphasis added); *see also Evans*, 936 F.3d at 196 (noting that the plaintiff and her comparator "must have virtually identical jobs"); *Wheatley v. Wicomico Cnty.*, 390 F.3d 328, 333 (4th Cir. 2004) ("In enacting the [Equal Pay Act], Congress chose the word 'equal' over the word 'comparable' in order to show that the jobs involved should be *virtually identical*, that is very much alike or closely related to each other" (emphasis added) (cleaned up)).

Thus, to establish equality of work, it is "[g]enerally . . . not enough to simply show that the comparator[] hold[s] the same title and the same general responsibility as the plaintiff." *Evans*, 936 F.3d at 196. Stated otherwise, "a plaintiff may not rely on broad generalizations at a high level of abstraction." *Spencer*, 919 F.3d at 204; *see also Wheatley*, 390 F.3d at 332–33 (rejecting the plaintiffs' argument that the managers of a county's eleven different departments all performed equal work and explaining that while, "at a high level of abstraction[,] these positions all require[d] [department] directors to do the same thing — supervise, coordinate, and organize" — "the [Act] demands more than a comparison of job functions from a bird's eye view"). And this requirement to rely on "more than broad generalities" has particular resonance in an employment context "where the work is an exercise in intellectual creativity that can be judged only according to intricate, field-specific, and often subjective criteria." *Spencer*, 919 F.3d at 205.

The record in this case shows that Moon and Polak were both coastal planners who were members of the team supervised by McKay, the Program Manager, and that they worked closely together and collaborated on issues of planning, grant progress, and

7

program performance.  Thus, the general description of their work was similar.  Even so, the record also showed that they had many different responsibilities involving different projects and grant recipients.  In particular, Program Manager McKay testified that Moon had expertise in coastal hazards, sea level rise, and shoreline erosion and that Polak did not have the same "kind of background or experience" in those topics.  Based on his expertise, Moon was responsible for "facilitating implementation of the . . . Section 309 Coastal Hazards Strategy, including annual grants and projects of special merit."  McKay testified that Polak was "not qualified" to perform that responsibility.  Another duty that Moon performed that Polak did not was "assisting in developing and submitting new narrative enforceable policies and managing grants to the William & Mary . . . Coastal Policy Center to assist in this effort."  Moon was also solely responsible for "represent[ing] Virginia on the [Mid-Atlantic Regional Council on the Ocean] Climate Change Action Team."  And he similarly had "responsibilities for managing aspects of the [Coastal Zone Management] program related to the National Estuarine Research Reserve System," which Polak did not do.  Finally, Moon helped organize "a marsh vulnerability assessment and adaptation strategy summit," for which Polak had no responsibilities.

The record shows similarly that Polak carried out duties that Moon did not have. She managed certain grants to the Virginia Department of Conservation and Recreation and helped "implement the Section 309 Cumulative and Secondary Impacts strategies." She also organized a statewide Working Waterfronts Summit that "resulted in development of the first Working Waterfronts Plan in Virginia."

8

Based on her understanding of what Moon did, Polak stated in her declaration that she and Moon filled "complementary" roles while having "equal" duties and "essentially the same job." But Polak could not have full comparative knowledge of both Moon's job and hers, as they each performed their work simultaneously in different contexts and on distinct projects to which each were assigned. She did acknowledge, however, that McKay, who was her "direct supervisor and boss at DEQ," "controlled the work performed by Mr. Moon and controlled the work that [Polak] performed." Polak thus implicitly acknowledged that McKay's knowledge of the similarities and differences between the jobs performed by Moon and Polak was unique. And McKay's superior perspective therefore was also critical to the resolution of Polak's claim under the Equal Pay Act.

In her declaration, Program Manager McKay testified to the jobs and relevant responsibilities of both Moon and Polak, noting that because of his background and experience, Moon was doing different and more complex assignments than those given to Polak. McKay stated, "Moon had more experience than Polak with respect to coastal planning policymaking and the updating of enforceable policies of the [Coastal Zone Management] [p]rogram. . . . Because he had more experience, *Moon worked on more challenging issues* related to the [Coastal Zone Management] program than Polak and *handled more difficult and complex grant application assignments*." (Emphasis added). McKay also listed numerous tasks that Moon but not Polak was assigned to perform.

Because Polak did not have the same vantage point as McKay, Polak could not assess the differences in Moon's work to which McKay testified, nor could she assess the relative complexity of his work. Thus, she did not — indeed, could not — rebut McKay's

9

testimony.  Rather, Polak relied on her own more limited perspective, giving her opinion that the roles she and Moon filled "were complementary and [their] duties equal" and that she and Moon had "essentially the same job."  But even with that very general conclusion, she could not dispute McKay's testimony that Moon not only did *different* work but he also "worked on more challenging issues" and "handled more difficult and complex grant application assignments" than did Polak.

Based on that record, the district court did not err in concluding that Polak could not establish that she and Moon performed "equal work."  To be sure, Polak and Moon performed *similar* work.  But the differences in the actual work performed and the level of complexity involved were significant enough that their work cannot be fairly described as "substantially equal" or "virtually identical," as required to establish a claim under the Equal Pay Act.  Accordingly, we affirm the district court's order granting summary judgment to DEQ.

AFFIRMED